ESTATE OF MARY CULTON McCUTCHAN, Betty Wiskirchen, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of McCutchan v. Commissioner
Docket No. 11524-77.
United States Tax Court
T.C. Memo 1979-393; 1979 Tax Ct. Memo LEXIS 130; 39 T.C.M. (CCH) 219; T.C.M. (RIA) 79393; September 24, 1979, Filed J. Patrick Wheeler, for the petitioner. William J. Falk, for the respondent. *132 FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined a deficiency of $9,652.41 in petitioner's Federal estate tax and an addition to tax under section 6651(a) [1] of $482.62. Because of concessions, the remaining issues are (1) whether the amount of the charitable deduction petitioner claims under section 2055(a) must be reduced under section 2055(c) by the charitable bequests' pro rata share of Federal estate tax, (2) whether petitioner is liable for an addition to the tax under section 6651(a), and (3) whether a deduction from the gross estate should be allowed for attorney's fees associated with this proceeding. All of the facts have been stipulated and are found accordingly. Petitioner, Betty Wiskirchen, is the executrix of the Estate of Mary Culton McCutchan, and at the time she filed her petition in this case petitioner's legal residence was Canton, Mo.
Mary Culton McCutchan died testate on October 19, 1975, while resident and domiciled in the State of Missouri. [2] Exactly ten months later, on August 19, 1976, petitioner filed a Federal estate *133 tax return with the Internal Revenue Service Center at Kansas City, Mo.
Miss McCutchan's last will and testament was admitted to probate in the Probate Court of Lewis County, Mo. In article One of the will the decedent directed that her debts and final expenses be paid as soon as practicable. Articles Two through Four contained specific legacies and devises. Article Five provided as follows: ARTICLE FIVE: All the rest, residue and remainder of my estate of whatever nature and wherever located, I do hereby direct that my Executor shall convert same to cash, by public or private sale at the earliest practicable time after my death, said sales to be conducted for cash. The proceeds from such sales, and all of the residue of my estate, I do give and bequeath in the following amounts: (a) One-tenth (1/10) of my residuary estate to the Board of World Missions of the Presbyterian Church, U.S., commonly called the Southern Presbyterian Church. (b) Onetenth (1/10) of my residuary estate to the American Bible Society, 1865 Broadway, New York, New York, 10023, with directions that two-thirds (2/3) *134 of the bequest be used for the regular activities of the Society and one-third (1/3) to be used for providing special assistance and printing for blind persons. (c) One-tenth (1/10) of my residuary estate to the American Leprosy Missions, Inc., 297 Park Aenue South, New York, New York, 10010. (d) One-tenth (1/10) of my residuary estate to the presbyterian Home for children of Missouri, Farmington, Missouri. (e) One-tenth (1/10) of my residuary estate to the Board of World Missions of the Presbyterian Church, U.S., specifically for Overseas Relief. (f) One-tenth (1/10) of my residuary estate to the Christian Herald Association, Inc., 827 East Thirty-ninth Street, New York, New York, 10016, with specific instructions and directions that two-thirds (2/3) of such bequest be used for the Christian Herald Childrens Home and one-third (1/3) be used for the Bowery Missions. (g) One-tenth (1/10) of my residuary estate to Marjorie Munn McCutchan or to her issue per stirpes and not capita. (h) One-tenth (1/10) of my residuary estate to Marjorie Ann Clark or to her issue per stirpes and not per capita. (i) One-tenth (1/10) of my residuary estate to Mary Caroline McCutchan, *135 and if she shall predecease me her share shall then be the property of Marjorie Ann Clark. (j) One-tenth (1/10) of my residuary estate to Mary Emeline McCutchan. Should she predecease me, then this one-tenth (1/10) share shall go to the General Benevolence Fund of the Presbyterian Church, U.S.
In his statutory notice, respondent disallowed under section 2055(c) a portion of the estate's charitable deduction by allocating the Federal estate tax due pro rata among all of the shares of the residue bequeathed, six one-tenth shares of which went to various charities. Respondent also determined that the estate tax return was filed late without reasonable cause and asserted an addition to the tax under section 6651(a). The first issue in this case is whether the amount of the charitable deduction allowed under section 2055(a) must be reduced under section 2055(c) by the charitable bequests' pro rata share of Federal estate tax. To answer this question we must decide whether the will, construed under Missouri law, bequeathes before-tax or after-tax fractional shares of the residue to various charitable and religious institutions. *136 Generally, a decedent's gifts for public, charitable, and religious uses are deductible from the gross estate under section 2055(a). [3] However, if under the terms of the decedent's will or local law the charitable bequests must bear part of the burden of estate taxes, then section 2055(c) provides that the amount of the estate's charitable deduction must be reduced by that part of the taxes paid out of such charitable bequests. [4] In other words, section 2055(c) limits the charitable deduction to the after-tax amount in fact devised or bequeathed to charity. [5] Therefore, the narrow issue we decide here is how to construe the phrase "One-tenth (1/10) of my residuary estate" as used in six separate bequests to charities under the will. *137 The principles which lead us to the ultimate issue of state law are not in dispute. Respondent does not contest the deductibility of the charitable bequests, only the amounts thereof. Further, it is clear that while the Federal estate tax is imposed against the estate as a whole, the devolution of property in the estate and, thus, the ultimate impact of the tax upon the legatees is a question of local law. Riggs v. Del Drago,317 U.S. 95 (1942); United States v. Goodson,253 F.2d 900 (8th Cir. 1958). It is equally clear that the Missouri courts do not follow the "burden on the residue" rule, under which estate taxes constitute a charge against the residuary estate. See, e.g., Buffaloe v. Barnes,226 N.C. 313, 38 S.E.2d 222 (1946). Instead, the Supreme Court of Missouri has adopted the doctrine of equitable apportionment. In re Estate of Hough,457 S.W.2d 687 (Mo. 1970); Jones v. Jones,376 S.W.2d 210 (Mo. 1964); *138 Hammond v. Wheeler,347 S.W.2d 884 (Mo. 1961); Carpenter v. Carpenter,364 Mo. 782, 267 S.W.2d 632 (1954). See Reed v. United States,316 F. Supp. 1228 (E.D. Mo. 1970). The principle of equitable apportionment is that the property on which the tax is paid must bear the burden of the tax. Thus, where non-probate property adds to the taxable estate, the owners or beneficiaries of such property may be required to contribute their pro rata shares of the Federal estate tax t the executor. Carpenter v. Carpenter,supra.Conversely, a widow who elects against the will or who takes a distributive share in intestacy will not bear any tax burden with respect to such property as is eligible for the marital deduction and reduces the taxable estate, see sec. 2056. In re Estate of Hough,supra;Jones v. Jones,supra;Hammond v. Wheeler,supra;United States v. Melman,398 F. Supp. 87 (E.D. Mo. 1975); Reed v. United States,supra.[6] Correspondingly, since deductible charitable bequests also reduce the amount of the Federal taxable *139 estate, sec. 2055(a), the doctrine of equitable apportionment will relieve such bequests of the burden of Federal taxes. In re Estate of Wahlin,505 S.W.2d 99 (Mo. App. 1973). See also First National Bank of Omaha v. United States,490 F.2d 1054 (8th Cir. 1974) (Nebraska apportionment statute applied). However, since in Missouri as elsewhere the touchstone of will construction is to give effect to the testator's intent, Housman v. Lewellen,362 Mo. 759, 244 S.W.2d 21 (1951), equitable apportionment will not be applied where the testator directs otherwise. Commerce Trust Company v. Starling,393 S.W.2d 489, 494 (Mo. 1965); *140 St. Louis Union Trust Company v. Krueger,377 S.W.2d 303 (Mo. 1964). See Estate of Avery v. Commissioner,40 T.C. 392 (1963). Thus, we must determine here whether Miss McCutchan's will reveals any intent allocating the Federal estate tax burden among the residuary legatees. Respondent contends that "residuary estate" as used in the will means net estate after taxes and that each one-tenth share of the residue should thus bear its pro rata share of Federal estate tax. [7] Petitioner, on the other hand, argues that the will does not allocate the tax burden and, therefore, the Missouri courts would apply the doctrine of equitable apportionment to absolve the charitable bequests of Federal tax liability. Petitioner relies on In re Estate of Wahlin,supra, decided by the Missouri Court of Appeals. [8] Respondent asks us to disregard Wahlin as an intermediate state court's ruling that would not be followed by the state's highest court. For the reasons below we agree with petitioner. *141 To begin with, the Missouri Court of Appeals decision In re Estate of Wahlin,supra, is squarely on point. In Wahlin, the relevant dispositive language of the will before the court was much the same as in the instant case and the issue was exactly the same: Was any express or implied intent of the testator discernible that would preclude applying equitable apportionment and exonerating the residuary charitable legatees from the impact of the Federal estate tax? Article I of the Wahlin will was substantially identical to article One of the McCutchan will. Next, following a specific bequest, article IV of the Wahlin will bequeathed "all of the rest, residue and remainder" of the estate in the following amounts: 25 percent to the testator's sister, 25 percent to a friend, 25 percent to the Masonic Shrine Crippled Children's Hospital, and the final 25 percent in smaller shares to six other religious and charitable institutions. Aside from listing the individuals before the charities, this article was structurally indistinguishable from article Five of the McCutchan will. Article V of the Wahlin will provided that if testator's sister were to predecease him, *142 "I then give that part of my estate (25%) which she would have received under this will, to my good friend, Miss Doris Hamilton." Article VI provided that if Doris Hamilton predeceased testator, "I then give that portion of my estate which she would have received under this will, as an additional amount to the Masonic Shrine Crippled Children's Hospital at St. Louis, Missouri." In re Estate of Wahlin,supra,505 S.W.2d at 102. These latter two provisions precisely paralleled articles Five (i) and Five (j) of the McCutchan will. In Wahlin, the Missouri Court of Appeals construed the will as a whole and found no intent on the part of the testator allocating the burden of Federal estate taxes upon either the entire residue or just the noncharitable legatees. The court did not infer any intent allocating the tax burden from the fact that the charitable bequests were expressed as shares of the residue. Nor did the court infer such an intent from the language in article VI, under which the portion that would have been received by an individual who predeceased the testator would pass over to a hospital. Finding no intent, the court applied the Missouri doctrine of equitable *143 apportionment and placed the estate tax burden on the individual residuary legatees. We have noted how similar in structure and in language is the will in this case to that in Wahlin. There are no factors in the McCutchan will from which an intent to allocate the tax burden could be inferred that were not before the court in Wahlin. Thus, unless we find Wahlin was decided erroneously, we are constrained to follow it and rule here that the Missouri courts would apply equitable apportionment in this case, relieving the charitable bequests of any Federal estate tax burden. Respondent asks us to disregard Wahlin as the decision of an intermediate court that would not be followed by the state's highest court. See Commissioner v. Estate of Bosch,387 U.S. 456 (1967). Respondent argues the Wahlin court should have followed the reasoning of the earlier Missouri Supreme Court decision St. Louis Union Trust Company v. Krueger,supra.Petitioner argues that the Missouri Court of Appeals in Wahlin properly distinguished Krueger. We agree with petitioner. The issue in Krueger was closely analogous to the issues in *144 Wahlin and in the instant case. In Krueger, the court decided that a fractional share passing to the testatrix's husband was mean to be burdened with estate taxes. [9] No provision in the will expressly allocated the tax burden. Since marital bequests are deductible, equitable apportionment, had it applied, would have absolved the bequest of a tax burden. However, the court found the testatrix intended otherwise, construing, interalia, the following language: SECOND: I hereby give and bequeath unto my husband, WILLIAM F. HERKERT, one-half of my estate, if living. Should my husband predecease me, I hereby give and bequeath my said husband's share to my nephew, WALTER CONRAD SCHMIDT, son of my brother Conrad Schmidt, deceased. [377 S.W.2d at 304.] We read Krueger as relying heavily on the "persuasive clue," 377 S.W.2d at 305, that the contingent share going to the nephew was to be the same as the husband's even though as such it would not have been eligible *145 for the marital deduction. The court reasoned: [By] making no distinction between the share to go to her husband if he outlived her and the share to go to her nephew if her husband died first, it appears that in either event the portion of her estate devised was intended to be the same. This provision strongly indicates the testatrix's intent to be that her husband's share would be one-half of her net estate available for distribution after payment of all debts, claims, administration expenses, taxes, including federal estate taxes, and other lawful charges. [377 S.W.2d at 306.] [10]
Respondent contends the above principles are applicable in this case and should have been applied in Wahlin. Therefore, respondent argues that because the shares going to charities and the shares going to individuals in the McCutchan will are all described by the language "One-tenth (1/10) of my residuary estate," the testatrix intended all the residuary shares to be equal. However, the facts in this case are *146 distinguishable from those in Krueger. In Krueger the court analyzed a single share whose deductible character would change under different contingencies, but here, as in Wahlin, we are faced with separate and distinct shares. Thus, Krueger's "persuasive clue" to the testatrix's intent is here absent. [11] Based on our reading of Missouri law, we cannot say that Wahlin would have been overruled by that state's highest court. [12]
Our result is further supported by the overall structure of article Five of Miss McCutchan's will. The decedent gave six-tenths of the residue to various charities and only fourtenths to her relatives, and she named the charities before the relatives. She thus favored the charities generally over her relatives. Since *147 the testatrix is presumed to know the law, Stifel v. Butcher,487 S.W.2d 24, 37-38 and cases cited (Mo. 1972), she may be presumed to be aware of the Missouri doctrine of equitable apportionment. Without any clearly expressed intent, we certainly will not infer an intent on the part of the decedent to burden the charitable beneficiaries with Federal estate taxes. [13]
For the foregoing reasons we hold that since no intent of the testatrix is discernible, the Missouri courts would apply the doctrine of equitable apportionment *148 in this case. We therefore hold that no portion of the Federal estate taxes due are allocable to the six one-tenth shares bequeathed to various charities and, thus, section 2055(c) does not apply to reduce the amount of the estate's charitable deduction. The second issue is whether petitioner is liable for an addition to tax for late filing under section 6651(a). [14] The only fact pertaining thereto in the fully stipulated record is the return was filed exactly ten months after the date of decedent's death and was therefore one month late. See sec. 6075(a). Petitioner bears the burden of proving that the failure to timely file was due to reasonable cause and not due to willful neglect. Estate of Derby v. Commissioner,20 T.C. 164, 170 (1953). Submitting no evidence, she fails to carry her burden. See Hallowell v. Commissioner,56 T.C. 600, 608 (1971). We therefore hold respondent's determination of an addition must be sustained. *149 Finally, respondent has conceded on brief that petitioner is entitled to deduct her legal costs incurred during this dispute provided they are properly substantiated. See sec. 20.2053-3(c)(2), Estate Tax Regs. We leave the amount to be agreed on by the parties under Rule 155, Tax Court Rules of Practice and Procedure.[15]
To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. All real estate the decedent owned at her death was also located in Missouri.↩
3. Sec. 2055(a) provides in part: In General.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers-- * * *
(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * (3) to a trustee, or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used * * * exclusively for religious, charitable, scientific, literary, or educational purposes, * * * ↩
4. Sec. 2055(c) provides: Death Taxes Payable Out of Bequests.--If the tax imposed by section 2001↩, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. 5. H. Rept. No. 708, 72d Cong., 1st Sess., 1939-1 C.B. (Part 2) 457, 492-493 (1932); S. Rept. No. 665, 72d Cong., 1st Sess., 1939-1 C.B. (Part 2) 496, 534 (1932). Some unavoidable circularity, resolvable by algebraic formulae or trial and error, arises applying sec. 2055(c) since limiting the charitable deduction increases the estate taxes payable which further limits the deduction and so forth. See Estate of Baumberger v. Commissioner,551 F.2d 90 (5th Cir. 1977), affg. a Memorandum Opinion of this Court; Rev. Rul. 76-359, 1976-2 C.B. 293↩.
6. See also United States v. Traders National Bank of Kansas City,248 F.2d 667, 670 (8th Cir. 1957) wherein the court approved an equitable apportionment based on Carpenter v. Carpenter,364 Mo. 782, 267 S.W.2d 632 (1954); but before the decisions in Hammond v. Wheeler,347 S.W.2d 884 (Mo. 1961) and Jones v. Jones,376 S.W.2d 210↩ (Mo. 1964).
7. Respondent also refers us to In re Holmes' Estate,328 Mo. 143, 40 S.W.2d 616 (1931), for the proposition that "residuary estate" is construed in Missouri to be an after-tax amount. Respondent inexplicably ignores the facts that Holmes antedated Riggs v. Del Drago,317 U.S. 95 (1942); that Carpenter v. Carpenter,supra, rejected Holmes as being based on a stipulation of the parties; and that, to the best of our knowledge, the case has not been cited for any purpose in Missouri since Carpenter.↩
8. In view of our disposition of this first issue, we need not consider petitioner's other arguments based upon the Missouri Probate Code, V.M.A.S. secs. 472 and 473 (1956 & Supp. 1979).↩
9. See generally sec. 2056(b)(4)(A); Estate of Wycoff v. Commissioner,506 F.2d 1144 (10th Cir. 1974), cert. denied 421 U.S. 1000↩ (1975).
10. For a similar result involving a Missouri will in a case decided before Krueger, see Estate of Avery v. Commissioner,40 T.C. 392↩ (1963).
11. We express no opinion on what might have been the result had the contingent share passing over to a charity in article Five(j) of the McCutchan will vested. We therefore do not endorse or reject the dictum in Wahlin on the issue. See In re Estate of Wahlin,505 S.W.2d 99, 111↩ (Mo. App. 1973). 12. Cf. Commissioner v. Estate of Bosch,387 U.S. 456, 462↩ n. 3, 465 (1967).
13. Compare St. Louis Union Trust Company v. Krueger,377 S.W.2d 303 (Mo. 1964), where the court also relied on overall structure in construing the will before it. In deciding that the testatrix intended her husband's portion to share the burden of estate taxes, the court noted that the entire residue was bequeathed to her nephew and that her husband had passed away thirteen months after the testatrix. Thus, the practical effect of the decision in Krueger↩ was to split the tax burden between her husband's estate and her nephew, a result which avoided a reading of the will favoring her husband's relatives over her own.
14. The amount of the addition will be decreased to reflect the reduction in the deficiency by our disposition of the first issue herein. Petitioner also contests additions under sec. 6651(a) assessed earlier pursuant to sec. 6659(b).↩
15. See also Rule 156, Tax Court Rules of Practice and Procedure.↩